UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| THE NANCY SUE DAVIS TRUST, <br><br> Plaintiff, <br><br> vs. <br><br> GREGG DAVIS, WILLEM MESDAG, EVERCORE CAPITAL PARTNERS II, RED MOUNTAIN CAPITAL PARTNERS LLC, SANKATY, <br><br> Defendants. | CASE NO. _____ |

## PLAINTIFF'S MOTION FOR LEAVE TO FILE ORIGINAL COMPLAINT

Plaintiff The Nancy Sue Davis Trust ("ND Trust") moves for leave to file the original complaint attached hereto as Exhibit A.

On March 7, 2006, Davis Petroleum Corp., Davis Offshore, L.P., and Davis Petroleum Pipeline LLC (collectively the "Davis Family Companies") sought protection under Chapter 11 of the Bankruptcy Code as a part of a prepackaged bankruptcy. The point of the bankruptcy was to facilitate a sale of the Davis Family Companies that had been presented to the family members on March 2, 2006. On March 9, only three days later, the United States Bankruptcy Judge Richard Schmidt held a confirmation hearing, and on March 10, he signed the Order, which is attached as Exhibit B to this Motion.

Plaintiff unsuccessfully sought to revoke the Order pursuant to 11 U.S.C. § 1144 in the Bankruptcy Court, and Judge Schmidt's Order Granting Summary Judgment is pending on appeal before this Court. Notwithstanding Plaintiff's efforts with respect to the Order, Plaintiff also intends to pursue independent claims for damages against Gregg Davis, Willem Mesdag, Evercore Capital Partners II, Red Mountain Capital Partners LLC, and Sankaty (collectively

"Defendants") based in part on some of the same misconduct by the Defendants that gave rise to the section 1144 action.

Plaintiff seeks to sue Defendants for fraud, breach of fiduciary duty, gross negligence, and conspiracy as reflected in the Original Complaint. Plaintiff anticipates Defendants will contend that the Order insulates them from liability for their malfeasance. Plaintiff believes that such a lawsuit is authorized by law and not inconsistent with the injunction contained in the Order. In an abundance of caution, however, Plaintiff requests this Court determine that Plaintiff may proceed.

## BACKGROUND

Plaintiff's Original Complaint alleges counts against the Defendants for fraud, breach of fiduciary duty, and other intentional torts in connection with the ultimate disposition and sale of the Davis Family Companies. The Bankruptcy Court approved a prepackaged sale to Defendants pursuant to confirmation of a joint plan of reorganization which was approved in the Order. Included in the Order are a series of releases, indemnifications and exculpations for the Defendants as well as an adoption of the releases, indemnifications and exculpations contained in the plan for the Defendants. The releases, indemnifications and exculpations relate to acts occurring prior to the effective date of the plan. The actions giving rise to the claims asserted by Plaintiff in the Original Complaint occurred on the effective date of the plan when sale to the tort feasors was consummated and title transferred. The limitations of the Order to pre-effective date conduct on its face is inapplicable here.

While the plan excluded from release willful misconduct and gross negligence of the Defendants, the language in the Order is silent as to such exclusion except for its adoption of the releases, indemnifications and exculpations contained in the plan. It appears unlikely that anyone intended to release the Defendants for willful misconduct which forms the basis of all of

Plaintiff's claims in the Original Complaint. Plaintiff brings this issue to this Court which is the same Court that will adjudicate the Original Complaint so that the Defendants do not attempt to hide behind the Davis Family Companies' bankruptcy in efforts to avoid liability for their malfeasance. The Order provides an exculpation and release of various parties, including all the Defendants to be named in the Original Complaint attached hereto as Exhibit A, and contains an injunction against the bringing actions based on a claim that is covered by the exculpation and release, *except as expressly set forth in the plan.* Exhibit B ¶ 13. The Order provides that "[t]he terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order." Exhibit B ¶ 5. The Order further provides that "[t]he injunction, release, exculpation and indemnification provisions set forth in the Plan are hereby approved in their entirety and given effect as of the Effective Date of the Plan. Exhibit B ¶ 9.

> Yet, the Order attempts to rewrite the exculpation clause as follows:
>
> None of the Debtors, the Debtors' directors, officers, employees, equity holders, members, agents, advisors, accountants, financial advisors, consultants, attorneys, and other representatives shall have or incur any liability to any holder of a claim or equity interest that arose before the Effective Date of the Plan for any act, event, or omission in connection with, or arising out of, these Chapter 11 Cases, or in connection with the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, and shall be entitled to the rights, benefits and protections of Section 1125(e) of the Bankruptcy Code.

Exhibit B ¶ 10.

> The Order restates the release provision as follows:
>
> On the Effective Date, except for Causes of Action arising under the Purchase and Sale Agreement or the Plan, . . .each Debtor party shall be deemed to forever waive, release and discharge any and all Causes of Action against all Buyer Parties that is based, whether in whole or in part, upon any act, omission, event, condition, or thing in existence or that occurred, whether in whole or in part, prior to the Effective Date of the Plan.

Exhibit B ¶9 (emphasis added).

The plan, however, limits the scope of the exculpation and limitation of liability provisions. The plan expressly includes the clause "except for willful misconduct and gross negligence." On page 27 of the Plan, the following language appears:

> Neither the Debtors, Parties nor the Buyer Parties shall have or incur any liability to any holder of a Claim or an Interest, the Bank, or any other party in interest, including the Debtor Parties or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, ***except for their willful misconduct or gross negligence***, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.
>
> Notwithstanding any other provision of this Plan, no holder of a Claim or Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, shall have any right of action against the Debtors, the Estate(s), the Reorganized Debtors, Buyer Parties, the Liquidating Trustee or any of their respective present or former members, officers, directors, employees, advisors, attorneys, or agents, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the pursuit of confirmation of the Plan, consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, ***except for their willful misconduct or gross negligence.***

Exhibit C, at 27 (emphasis added).

## LEGAL ANALYSIS

1. **THE ORDER DOES NOT PRECLUDE CLAIMS BASED ON WILLFUL MISCONDUCT OR GROSS NEGLIGENCE.**

There is no dispute that the Order was prepared hastily. The Plan was submitted on March 7; the hearing was held on March 9; and the Order was signed on March 10. The plan language, however, makes clear that the intent was that claims relating to willful misconduct or gross negligence were not intended to be released or exculpated and certainly not if they occurred on or after the effective date. And, the Plan is incorporated by reference into the Order

itself. Accordingly, the Order's injunction does not apply to Plaintiff's Original Complaint, attached hereto as Exhibit A.

Moreover, the express limitation of the Order to pre-effective date conduct clearly makes the Order inapplicable to Plaintiff's claims which arise on the effective date when the sale was consummated to the Defendants.

2. **PLAINTIFF WAS NOT REQUIRED TO ASSERT THE CLAIMS ALLEGED IN THE COMPLAINT IN THE UNDERLYING BANKRUPTCY ACTION.**

The claims alleged in the Complaint were not known at the time the Plan was presented and the Confirmation Order was entered. The underlying bankruptcy was a fast-tracked prepackaged bankruptcy. Thus, by its nature, there was little opportunity to investigate and litigate potential claims arising out of the sale and confirmation process. Because the claims were not (and could not have been) discovered until after the Effective Date of the Plan, when the fraudulent transaction was consummated, the Confirmation Order does not have any *res judicata* effect on the claims asserted in the Complaint. *See In re Newport Harbor Assocs.*, 589 F.2d 20, 23-24 (1st Cir. 1978) (Doctrines of *res judicata* and *collateral estoppel* do not bar such an action, *at least where the alleged fraud could not have been asserted in the bankruptcy proceedings, the underlying factual claims were not actually adjudicated and the relief sought would not upset the confirmed plan of arrangement.*) (emphasis in original); *Siegemund v. Shapland*, 2002 U.S. Dist. LEXIS 18160 *44 (D. Me. 2002) ("Under Maine law, a fraud claim is not barred by the doctrine of *res judicata* unless the plaintiff knew of the fraud at the time of the first action.") (citation omitted).

As alleged in the Complaint, Defendants' "concealment prevented [Plaintiff] from bringing those claims during the confirmation proceedings." *Genesis Health Ventures, Inc. v. Goldman Sachs & Co.*, 355 B.R. 438, 454 (D. Del. 2006). Accordingly, *res judicata* does not bar Plaintiff's claims. *Id.*

3.  **SECTION 1144 OF THE BANKRUPTCY CODE IS NOT PLAINTIFF'S EXCLUSIVE REMEDY FOR FRAUD.**

Plaintiff may assert both a claim to revoke the Confirmation Order as well as an action for monetary damages for Defendants' misconduct with regard to the sale of Davis Petroleum. While Section 1144 is the only available means to revoke a confirmation order, it is not the exclusive remedy for fraud:

> while the revocation provision [of 11 U.S.C. §1144] provides the exclusive means for revoking a confirmation plan for fraud, it does not necessarily provide the exclusive remedy for debtors or creditors who have been injured by fraud.

*Browning v. Prostok*, 165 S.W.3d 336, 344-45 (Tex. 2005) (citing *In re Newport Harbor Assocs.*, 589 F.2d 20, 23-24 (1st Cir. 1978)).[1] *See also In re Coffee Cupboard, Inc.*, 119 B.R. 14, 19 (E.D.N.Y. 1990) ("Section 1144 does not act as a bar to a truly independent courses of action based on a debtor's wrongful conduct.").

Instead, the critical question is whether the claims asserted in the Complaint would "upset the confirmed plan." *Donaldson v. Bernstein*, 104 F.3d 547, 777 (3d Cir. 1997) (quoting *Newport Harbor Assocs.*, 589 F.2d at 24); *Genesis Health Ventures, Inc. v. Goldman Sachs & Co.*, 355 B.R. 438, 445 (D. Del. 2006) (finding that §1144 did not apply to claims brought two years after confirmation for fraud and conspiracy to defraud against non-debtor defendants because the claims would not "redivide the pie"); *S.N. Phelps & Co. v. Circle K Corp.*, 181 B.R. 457, 462 (Bankr. D. Ariz. 1995) (holding §1144 inapplicable to plaintiff's claim that valuation in bankruptcy had been misrepresented; "[i]f plaintiffs prevail, the Court can fashion a remedy that does not upset the confirmed plan, i.e., monetary damages."); *In re Crown-Globe, Inc.*, 107 B.R. 60, 61 (Bankr. E.D. Pa. 1989) (allowing claims of breach of third party beneficiary contract,

---

[1] In *Browning*, the Texas Supreme Court found the fraud claims were barred because "the alleged fraud was in fact asserted in the underlying bankruptcy proceedings." *Browning*, 165 S.W.3d at 351. In contrast, here, as in *Genesis Health Ventures*, "the alleged fraud was not and could not have been actually adjudicated." *Genesis Health Ventures*, 355 B.R. at 446.

888481v4/010865                                   6

international misrepresentation and negligent misrepresentation to proceed, while barring a claim for equitable subordination); *In re Emmer Bros. Co.*, 522 B.R. 385, 392 (D. Minn. 1985) (holding time limitation in §1144 inapplicable to post-confirmation discovery of fraudulent conduct).

The case of *Genesis Health Ventures* is instructive. In that case, the plaintiff filed a complaint two years after plan confirmation and alleged fraud, conspiracy to commit fraud and gross negligence against the debtor and others. *Genesis Health Ventures*, 355 B.R. at 442-43. The Court dismissed the complaint as to the debtor under §1144 and as to the other defendants under the doctrines of claim and issue preclusion. *Id.* at 443. The decision as to the debtor was affirmed but the decision as to the other defendants was reversed and remanded. *Id.* On remand, the court carefully analyzed the plaintiff's claim and the law regarding independent actions for fraud and gross negligence after plan confirmation.

The plaintiff in *Genesis Health Ventures* alleged that the Defendants "cooked" the debtor company's actual and projected EBITDA, such that the valuation confirmed by the bankruptcy court was a lowball valuation. *Id.* After carefully considering the analysis of a number of other courts addressing the issue, the court held that these allegations were not barred by §1144. *Id.* at 445-58. The court reasoned as follows:

> §1144's time limitation applies to relief that would 'redivide the pie' or otherwise upset a confirmed plan. . . .
>
> Why deny the adversely affected creditors from pursuing a fraud claim against the wrongdoing creditor, with no impact on the reorganized debtor or the plan? In this Court's view, under the facts alleged here (assuming they are proven at trial), there ought to be a remedy to redress the harms suffered and a mechanism to divest the alleged tortfeasors of their ill-gotten gains, at least where doing so would not affect innocent parties.
>
> . . . Section 1144's primary concern is protecting innocent third parties who relied on the confirmation order. . . . an independent money judgment against a creditor guilty of fraud would only affect that particular creditor. . . If Plaintiffs are ultimately successful here, Defendants will have to satisfy the judgment out of

> their own pockets. Thus, unlike an action against the Debtor, the damage claim here would not "redivide the pie" as between two classes of claims.

*Id.* at 445-46.

As in *Genesis Health Ventures*, here the alleged fraud could not have been asserted in the bankruptcy; the ND Trust had no reason to learn of the fraud until after the confirmation in March 2007.  Consequently, as in *Genesis Health Ventures* (and unlike *Browning*), here, the underlying factual claims were not actually adjudicated.  ND Trust alleges in her Complaint that Gregg Davis misrepresented the value of the Davis Family Companies to ND Trust and the other family members as part of a scheme with the other defendants to buy the companies at a value far below market.  *See generally* Exhibit A.  The bankruptcy court did not adjudicate these factual claims, because the facts were not known to ND Trust until after the bankruptcy concluded.  Moreover, as in each of the cases cited above, the relief sought would not upset the confirmed plan of arrangement; ND Trust seeks monetary damages for the fraud, breach of fiduciary duty and related actions.  Those damages would not require any aspect of the bankruptcy court's confirmation order to be revoked.

The Texas Supreme Court has held that "[extrinsic fraud] generally includes wrongful conduct occurring outside of the adversarial proceedings" and that "a fiduciary's concealment of material facts to induce an agreed or uncontested judgment, which prevents party from presenting his legal rights at trial, is extrinsic fraud." *Browning,* 165 S.W.3d at 347.  That is exactly what occurred here.  As alleged in the attached complaint, Gregg Davis owed a fiduciary duty to the ND Trust and yet concealed material facts regarding the true value of the Davis Family Companies in order to induce the Davis Family equityholders to agree to the prepackaged bankruptcy.  The fraud began long before the bankruptcy petition was ever filed but consummated with Defendants' seeking and obtaining confirmation of the Plan.

4. **IN THE ALTERNATIVE, THIS COURT SHOULD WITHDRAW THE REFERENCE AND CLARIFY THE ORDER.**

To the extent this Court is concerned that it may not grant the instant motion without modifying the Order, Plaintiffs respectfully requests that the court withdraw the reference to Section 157(d) to clarify the Order and allow Plaintiff to litigate its claims by jury trial.

The District Court has "original but not exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11." 28 U.S.C. § 1334(b). The District Court can refer Chapter 11 cases to the bankruptcy court. (*See* General Order 2005-6 (referring Chapter 11 cases filed in the Southern District of Texas to the Bankruptcy Court).) The District Court also has the authority—pursuant to 28 U.S.C. § 157(d)—to withdraw any case referred to the Bankruptcy Court for "cause shown." The "cumulative effect" of Sections 1334(b) and 157(d) is that the Court "may exercise jurisdiction broadly." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998 (5th Cir. 1988). To the extent the claims asserted in the Complaint relate to a pending Chapter 11 case referred to the Bankruptcy Court (Case No. 06-20152), Plaintiff respectfully requests that the Court withdraw the reference to (i) clarify whether Plaintiff's lawsuit may go forward, and (ii) allow Plaintiff to litigate its claims in Federal District Court.

In deciding a motion to withdraw the reference for cause, the Court considers the following nonexclusive factors: whether the matter is core or non-core, the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, the economical use of resources, expediting the bankruptcy process, and the existence of a jury demand. *See Holland*, 777 F.2d at 999. As the Court is aware, an appeal regarding the Confirmation Order (which contains the Injunction, Release, and Exculpation provision about which Plaintiffs seek clarification) is now pending in this Court. The Court has authority to

simultaneously exercise its appellate and original jurisdiction. *See In re Moody (Revie v. Smith)*, 899 F.2d 383, 386 (5th Cir. 1990).

A uniform, efficient, and expedited approach to the various fraud claims asserted in the pending appeal and Complaint and the effect and validity of the Bankruptcy Court's Confirmation Order can best be achieved by withdrawing the reference and permitting Plaintiff to litigate these issues in District Court. *See id.*; *Holland*, 777 F.2d at 999. Plaintiff's Complaint also contains a jury demand, invoking their rights under the Seventh Amendment of the United States Constitution. (Complaint at ¶74.) This jury demand supports withdrawal of the reference because of the constitutional limitations on the bankruptcy court's authority to conduct a jury trial. *See In re Clay*, 35 F.3d 190, 198 (5th Cir. 1994) (granting mandamus relief directing the district court to withdraw the reference to "honor the [plaintiffs'] demand for trial by jury before an appropriate United States District Court"); *Holland*, 777 F.2d 999; *Levine v. M&A Custom Home Builder & Dev., LLC*, Civil Action No. H-08-2946, 2008 WL 5082400, at *1 (S.D. Tex. Nov. 25, 2008) ("withdrawal was appropriate" because the plaintiff demanded a jury trial).

To effectuate a uniform and efficient approach to the resolving Plaintiff's claims, including the authority to bring these claims, and to preserve Plaintiff's jury demand, Plaintiff respectfully requests that the Court withdraw the reference to the bankruptcy court pursuant to Section 157(d) and clarify the Order.

## CONCLUSION

For the reasons stated above, this Court should grant Plaintiff's motion for leave.

          Respectfully submitted,

          /s/ Stephen D. Susman
          Stephen D. Susman
          State Bar No. 19521000
          S.D. Adm. # 03257
          1000 Louisiana Street, Suite 5100
          Houston, Texas 77002-5096
          Telephone:  (713) 651-9366
          Fax:  (713) 654-6666
          E-mail: ssusman@susmangodfrey.com

          Attorney-in-Charge for Plaintiff

OF COUNSEL:
Harry P. Susman
State Bar No. 24008875
S.D. Adm. # 23067
Erica W. Harris
State Bar No. 00797697
S.D. Adm. # 20784
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:  (713) 651-9366
Fax:  (713) 654-6666
E-mail: hsusman@susmangodfrey.com
E-mail: eharris@susmangodfrey.com


HAYNES AND BOONE, LLP


Trey A. Monsour
State Bar No. 14277200
Robin E. Phelan
State Bar No. 15903000
901 Main Street, Suite 3100
Dallas, TX 75202
Telephone: (214) 651-5612
Fax: (214) 651-5940
Trey.monsour@haynesboone.com
Robin.phelan@haynesboone.com

Brian Antweil
State Bar No. 01275750
S.D. Adm. # 12482
HAYNES AND BOONE, LLP
1221 McKinney St., Suite 2100
Houston, TX 77002
Telephone (713) 547-2527
Fax: (713) 236-5642
Email: brian.antweil@haynesboone.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2009, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

\*\*

/s/ Stephen D. Susman
Stephen D. Susman